## Heiple v. Heiple

*Eugene E. Fike, II,* for plaintiff.
*Dean A. Bowman,* for defendant.

COFFROTH, *P.J.*, June 28, 1985 — This is an action for specific performance of child support provisions of a predivorce marital-settlement contract, to obtain judgment for (1) arrearages presently due, and (2) amounts of child support to become due in the future. The only defenses asserted by defendant are that: (1) when he made the contract he was able to make the payment agreed upon, but now because of unexpected financial reverses he is insolvent, out of business, unemployed and unable to pay, and (2) he should be entitled to credits of at least $10,000 for money paid out directly to James, the son of the parties, for a car given him, wages paid for his work for defendant (when he was in business) and moneys paid direct to the son. Defendant testified that he signed the contract in order to get the divorce (which was later granted) and that he is sorry now he agreed to the contract, although he still wants the divorce.

The foregoing defenses are somewhat the same as previously presented when this case came before us on plaintiff's preliminary objections to defendant's counterclaim for reduction of the amount of

child support provided for in the contract on account of changed economic circumstances; the objections were sustained and the counterclaim dismissed with leave to amend, and no amendment was made. The dismissal of the counterclaim was based on the Pennsylvania Supreme Court's decision in Brown v. Hall, 495 Pa. 635, 435 A.2d 859 (1981), in which the court held that a child support provision of a spousal separation contract will be specifically enforced, notwithstanding a prior order of the support court reducing the amount payable according to traditional criteria of need of the child and parental ability to pay, where the contract was intended as a continuing contractual obligation and was not merged in the divorce decree.[1]

We note a significant difference between defendant's dismissed counterclaim and the defense now raised in his testimony at the last hearing in the nonjury trial. The counterclaim alleges only that ". . . as a result of the general economic decline and a concurrent reduction in his earnings, there has been a sufficient change of circumstances to warrant a reduction of the amount agreed upon for the support and maintenance of his minor son, James. . . ." Brown clearly prohibits such a reduction in this case. But the thrust of defendant's testimony is that he is now unemployed and broke, mak-

---

1. It has since been held that if the settlement contract was incorporated into the divorce decree, thereby merging the contract into the decree court-ordered modification is permissible. Commonwealth ex rel Tokach v. Tokach, 326 Pa. Super. 359, 474 A.2d 41 (1984); Piersel-Eubank v. Piersel, 44 Somerset L.J. 71(1984); Christner v. Christner, 44 Somerset L.J. 106, 37 D.&C.3d 378 (1985); Madnick v. Madnick, 339 Pa. Super. 130, 488 A.2d 344 (1985). But that principle cannot apply here because there was no such incorporation, indeed no mention of the contract, in the divorce decree.

ing it impossible and a harsh imposition upon him to comply with the contract.[2] Although defendant did not plead impossibility or harshness as a defense to plaintiff's claim for equitable relief, we nevertheless allowed him to present his testimony at the hearing.

It is true that an equity court has discretion to deny specific performance of contract on the ground that such a decree would be unconscionable, unreasonably harsh, or unfair. Payne v. Clark, 409 Pa. 557, 187 A.2d 769 (1963); PLE, Specific Performance §2; CJS, Specific Performance §§18 and 20; Restatement (Second) of Contracts §364; Summary of Pennsylvania Jurisprudence, Equity §71; compare Steuart v. McChesney, 284 Pa. Super. 29, 424 A.2d 1375(1981). It is also a general principle as stated in CJS, supra, §20b:

"Subsequent events or changes in conditions which the party did not contemplate when the contract was made may furnish sufficient reason for refusing specific performance; but events which should have been contemplated as possible contingencies will not preclude specific performance." Hence, hardship is no defense if it results merely from the fact that defendant made a bad bargain. Summary of Pennsylvania Jurisprudence, supra.

Where the impossibility or hardship results from changes in financial circumstances of the obligor

---

2. At the hearing, defendant also claimed credit for moneys paid direct to the child, but the contract plainly requires that support payments be made to plaintiff mother. Compare Commonwealth ex rel Stahl v. Stahl (No. 1), 40 Somerset L.J. 209, 216 (1980) and Commonwealth ex rel Farrell v. Farrell (No. 2), 42 Somerset L.J. 297 (1983). Whatever the obligor chooses to give direct to the dependent child will not reduce or alter his contractual obligation to the mother unless the contract itself provides for such a reduction.

from those existing when the contract was made, it is generally stated that: "Mere change in defendant's financial circumstances is not such a circumstance as justifies denial of specific performance." CJS, supra, §20 at note 46. Accordingly, it is a general rule that supervening insolvency or other inability to pay a money obligation will not of itself excuse performance of such obligation, but is a factor considerable by the court in deciding whether under all the circumstances its discretion should be exercised in favor of or against equitable relief. See Fisher v. Wilde et al. (No. 1), 44 Somerset L.J. 32, 36 (1984). It can be safely generalized that any time granting or withholding equitable relief significantly disturbs the judicial conscience or sense of fairness, the court will refrain from doing so.

In Brown, supra, there was no indication of financial impossibility of the obligor to comply with the contract, nor any finding of harsh inequity in enforcing the contract, and no authority has been furnished us to support defendant's claim that he should be excused from performance by reason of impossibility or harsh unfairness. But our own research has found Fiske v. Fiske, 114 Montgomery 234 (1984), which holds that equity will deny specific enforcement of a marital agreement which required defendant to pay one-half of his net income for child support, where because of financial impossibility of performance an unreasonable financial burden exists after his income dropped by one-half; and the court then proceeded to make a reduced child-support order in accordance with criteria traditionally applied in the support court according to need and ability to pay. The report of Fiske indicates that the case is on appeal to the Superior Court.

In the instant case, the contract was openly and fairly entered into by both parties, each of whom

had separate counsel. The contract specifically states the circumstances under which the support obligation changes. It is was a comprehensive settlement extracted from defendant by plaintiff as the price of a consent divorce decree which defendant husband wanted very much. It is clear from the contract itself that the parties intended it as a complete expression of their agreement, see Field v. Golden Triangle Broadcasting Inc., 451 Pa. 410, 305 A.2d 689 (1973), and as a binding continuing obligation changeable only as it provided, as in Brown, supra. The contract itself recites that the parties " . . . now desire to settle all financial and property rights between them"; and paragraph 23 of the contract provides as follows:

"This agreement constitutes the entire understanding between the parties and there are no covenants, conditions, representations or agreements, oral or written, of any nature whatsoever, other than those herein contained."

There is nothing in the contract which provides or even suggests that its obligations are judicially modifiable as in the support court. At the time the contract was made, defendant was financially able to perform the contract, and his business prospects for the future were favorable, but business reverses have left him unemployed, insolvent and unable to pay, although he is not disabled and is able to maintain himself. But the details of that aspect of his circumstances remain obscure. Under the general equitable principles above outlined, we should take those circumstances into consideration in this equitable proceeding.

In doing so, we note that imposition of legal liability in the form of a judgment for liquidated arrearages is essentially a legal, not an equitable, remedy. See Knupp v. Knupp, 41 Somerset L.J 236 (1983).

Even in equity, the remedy of contempt for nonpayment will not be imposed in the form of any oppressive sanction as long as the default is not wilful, that is, results merely from a legitimate inability to pay. See Zambrzicky v. King Coal Company et al. 41 Somerset L.J. 23 (1982). Hence entry of the judgment here for arrearages is simply the equivalent of a judgment at law, to which financial inability or impossibility of payment is no defense; there will be ample opportunity at execution time to apply equitable criteria in measuring the propriety of collection procedures. The same principles are applicable to that part of the equity decree mandating specific performance of the contract in the future insofar as it entails only further monetary liability. Hence, there is no significant unfairness in the sort of specific performance in equity here sought. Moreover, there is no evidence in this case that defendant will never become financially able to pay in the future; if that occurs, it would then be apparent that a decree excusing defendant from liability for performing his contract by reason of a temporary inability to pay, would turn out to be extremely inequitable to plaintiff.

Our thinking is in apparent disagreement with the court in Fiske which, by virtue of present inability to pay, emasculates the voluntary contract of the parties and deprives the obligee of the consideration bargained for. Accordingly, we reject Fiske as applied to the circumstances of the instant case, and grant the relief requested.

## DECREE NISI

Now, June 28, 1985, it is ordered and decreed as follows:

1. A verdict is hereby rendered for plaintiff against defendant for the sum of $9,398, the

amount of child support due and unpaid through June, 1985, under the provisions of the marital-settlement agreement between the parties dated April 17, 1979.

2.. Defendant is directed to comply with the provisions of said agreement for the support of James by paying to plaintiff mother the sum of $710.50 monthly " . . . until said child, James, attains the age of 19 years" [Agreement, paragraph 6B (2)], and by paying " . . . all expenses for college and postgraduate education or training for . . ." said child James as provided in paragraph 6C of said agreement, and by paying hospital and medical insurance for him as provided in paragraph 6D of said agreement, as and when said payments become due.

3. The claims of plaintiff Judith having been waived and withdrawn, her complaint is dismissed.

4. Judgments for moneys payable in the future as provided in paragraph two of this decree nisi may be entered on praecipe from time to time if, as and when default occurs.

5. Costs on defendant.